UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

DUSTIN S. SOULEK, individually, and
as representative of a Class of
Participants and Beneficiaries, on
Behalf of the Costco 401(k) Retirement Plan;

        Plaintiff,

      v.

COSTCO WHOLESALE CORPORATION,

      and

THE BOARD OF DIRECTORS OF
COSTCO WHOLESALE CORPORATION,

      and

COSTCO BENEFITS COMMITTEE,

      and

JOHN DOES 1-30,

      Defendants

Case No. 20-cv-937

**CLASS ACTION COMPLAINT
FOR CLAIMS UNDER
29 U.S.C. § 1132(a)(2)**

---

## COMPLAINT

---

COMES NOW Plaintiff, Dustin S. Soulek ("Plaintiff"), individually and as representative

of a Class of Participants and Beneficiaries on behalf of the Costco 401(k) Retirement Plan (the

"Plan"),[1] asserts to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

## **<u>INTRODUCTION</u>**

1.　　The essential remedial purpose of the Employee Retirement Income Security Act ("ERISA") is "to protect the beneficiaries of private pension plans." *Nachwalter v. Christie*, 805 F.2d 956, 962 (11th Cir. 1986).[2]

2.　　The law is settled that ERISA fiduciaries have a duty to evaluate fees and expenses when selecting investments *as well as* a continuing duty to monitor fees and expenses of selected investments and remove imprudent ones. *Tibble v. Edison Int'l,* 135 S. Ct. 1823, 1828 (2015); 29 U.S.C. §1104(a)(1)(A) (fiduciary duty includes "defraying reasonable expenses of administering the plan;" 29 C.F.R. § 2250.404a-1(b)(i) (ERISA fiduciary must give "appropriate consideration to those facts and circumstances" that "are relevant to the particular investment." It is for good reason that ERISA requires fiduciaries to be cost-conscious:

> Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble,* 135 S. Ct. at 1826, by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees.

*Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019).

3.　　Defendants, Costco Wholesale Corporation ("Costco"), the Board of Directors of Costco Wholesale Corporation ("Board Defendants"), the Costco Benefits Committee ("Benefits Committee"), and John Does 1-30 (collectively, "Defendants"), are ERISA fiduciaries because

---

[1]　　The Plan is a legal entity that can sue and be sued. 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather pursuant to 29 U.S.C. § 1109(a), and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

[2]　　Unless indicated otherwise, cited and quoted cases are omitted.

they exercise discretionary authority or discretionary control over the 401(k) defined contribution pension plan – known as the Costco 401(k) Retirement Plan ("The Plan") – that it sponsors and provides to its employees.

4. Plaintiff alleges that during the putative Class Period (June 23, 2014 through the date of judgment), Defendants, as fiduciaries of the Plan, as that term is defined under ERISA, 29 U.S.C. § 1002(21)(A), breached the duties they owed to the Plan, to Plaintiff, and to the other participants of the Plan by, among other things: (1) authorizing the Plan to pay unreasonably high fees for recordkeeping; (2) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; and (3) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs, and/or better performance histories.

5. In addition, the Plan generally chose more costly "actively managed funds" rather than "index funds" that offered equal or better performance at substantially lower cost. Additionally, the administrative fees charged to Plan participants were consistently greater than the fees of most comparable 401(k) plans, when fees are calculated as cost per participant or when fees are calculated as a percent of total assets.

6. These investment options and unreasonable fees cannot be justified. Defendants' failure to monitor and improve investment options confirms more than simply sloppy business practice. Defendants' failures breached the fiduciary duties they owed to Plaintiff, Plan participants and beneficiaries. Prudent fiduciaries of 401(k) plans continuously monitor administrative fees against applicable benchmarks and peer groups to identify unreasonable and unjustifiable fees.

7. To remedy, Plaintiff brings this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) to enforce Defendants' liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from their breaches of fiduciary duty.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 et seq.

9. This Court has personal jurisdiction over Defendants because they transact business in this District and have significant contacts with this District, and because ERISA provides for nationwide service of process.

10. Venue is appropriate in this district because the Defendants and Plaintiff may be found in this judicial district within the meaning of 29 U.S.C. § 1132(e)(2).

11. In conformity with 29 U.S.C. §1132(h), Plaintiff served the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

12. Plaintiff, Dustin S. Soulek, is a resident of the State of Wisconsin and currently lives in Green Bay, Wisconsin, and during the Class Period, was a participant in the Plan under 29 U.S.C. § 1002(7).

13. Plaintiff has standing to bring this action on behalf of the Plan because he participated in the Plan and was injured by Defendants' unlawful conduct. Plaintiff is entitled to receive benefits in the amount of the difference between the value of his account as of the time their accounts were distributed, and what his accounts are or would have been worth, but for Defendants' breaches of fiduciary duty as described within this Complaint.

14.     The named Plaintiff and all participants in the Plan suffered financial harm as a result of the imprudent or unreasonable investment and fee options in the Plan. Defendants' selection and retention of these options resulted in higher administrative fees than the Plan and its participants and beneficiaries should have paid, as well as poorer net investment performance, had Defendants satisfied their fiduciary obligations. All participants and the Plan continue to be harmed by the ongoing inclusion of these investment options.

15.     Costco Wholesale Corporation is a company with its principal headquarters located at 999 Lake Drive, Issaquah, Washington. In this Complaint, "Costco" refers to the named defendant and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain. Costco is the Plan sponsor of the "Costco 401(k) Retirement Plan."

16.     Costco is "a membership warehouse club, dedicated to bringing . . . members the best possible prices on quality brand-name merchandise. With hundreds of locations worldwide, Costco provides a wide selection of merchandise, plus the convenience of specialty departments and exclusive member services, all designed to make . . . shopping experience[s] a pleasurable one."[3]

17.     Costco acted through its officers, including the Board Defendants, Benefits Committee, and their members (John Does 1-10), to perform Plan-related fiduciary functions in the course and scope of their business. Costco appointed other Plan fiduciaries, including the Benefits Committee, and accordingly had a concomitant fiduciary duty to monitor and supervise those appointees. For these reasons, Costco is a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

---

[3]     https://www.costco.com/about.html

18.     The Plan administrator of the Plan is the Costco Benefits Committee ("Benefits Committee"). It has its principal headquarters located at 999 Lake Drive, Issaquah, Washington.

19.     The Benefits Committee is a fiduciary with day-to-day administration and operation of the Plan under 29 U.S.C. § 1002(21)(A). The Benefits Committee has authority and responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. § 1102(a). The Benefits Committee has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

20.     The Benefits Committee and members of the Committee during the Class Period (referred to herein as John Does 11-20), are collectively referred to herein as the "Committee Defendants."

21.     To the extent that there are additional officers and employees of Costco who are/were fiduciaries of the Plan during the Class Period, or other individuals who were hired as investment managers for the Plan during the Class Period, the identities of whom are currently unknown to Plaintiff, Plaintiff reserves the right, once their identities are ascertained, to seek leave to join them to the instant action. Thus, without limitation, unknown "John Doe" Defendants 21-30 include, but are not limited to, Costco officers and employees who are/were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), during the Class Period.

22.     The Plan is a "defined contribution" pension plan under 29 U.S.C. § 1102(2)(A) and 1002(34), meaning that Costco's contribution to the payment of Plan costs is guaranteed but the pension benefits are not. In a defined contribution plan, the value of participants' investments is "determined by the market performance of employee and employer contributions, less

expenses." *Tibble*, 135 S. Ct.at 1826. Thus, the employer has no incentive to keep costs low or to closely monitor the Plan to ensure every investment remains prudent, because all risks related to high fees and poorly performing investments are borne by the participants.

23.     The Plan has at least $15,000,000,000 in assets entrusted to the care of the Plan's fiduciaries. The Plan had substantial bargaining power regarding the fees and expenses that were charged against participants' investments. Defendants, however, did not try to reduce the Plan's expenses or exercise appropriate judgment to monitor each investment option to ensure it was a prudent choice.

## ERISA'S FIDUCIARY STANDARDS

24.     ERISA imposes strict fiduciary standards of loyalty and prudence on Defendants as a Plan fiduciaries. 29 U.S.C. § 1104(a)(1) provides in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> > (A) for the exclusive purpose of:
> >
> > > (i) providing benefits to participants and their beneficiaries; and
> > > (ii) defraying reasonable expenses of administering the plan; [and]
> >
> > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

25.     With certain exceptions not relevant here, 29 U.S.C. § 1103(c)(1) provides in relevant part:

> [T]he assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

26.     29 U.S.C. § 1109 provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

27.     Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and for the exclusive benefit of participants in the plan, and not for the benefit of third parties including service providers to the plan such as recordkeepers and those who provide investment products. Fiduciaries must ensure that the amount of fees paid to those service providers is no more than reasonable. DOL Adv. Op. 97-15A; DOL Adv. Op. 97-16A; *see also* 29 U.S.C. §1103(c)(1) (plan assets "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan").

28.     "[T]he duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.,* 74 F.3d 420, 435 (3d Cir. 1996); *Katsaros v. Cody*, 744 F.2d 270, 279 (2nd Cir. 1984) (fiduciaries must use "the appropriate methods to investigate the merits" of plan investments). Fiduciaries must "initially determine, and continue to monitor, the prudence of each investment option available to plan participants." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007); 29 C.F.R. § 2550.404a-1; DOL Adv. Opinion 98-04A; DOL Adv. Opinion 88-16A. Thus, a defined contribution plan fiduciary cannot "insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the

participants the responsibility for choosing among them." *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009). Fiduciaries have "a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble,* 135 S. Ct. at 1828-29.

29.     "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act § 7.

30.     29 U.S.C. § 1132(a)(2) authorizes plan participants to bring a civil action for appropriate relief under 29 U.S.C. § 1109.

## THE PLAN

31.     Started on January 1, 1995, the Plan has had more than 170,000 participants and assets exceeding $15,000,000,000 since the year 2018. At the end of the year 2018, the Plan had approximately 174,403 participants and approximately $15,464,315,721 in assets. At different times, the Plan offered about 42 different investment choices to its participants.

32.     At all relevant times, the Plan's fees were excessive when compared with other comparable 401(k) plans offered by other sponsors that had similar numbers of plan participants, and similar amounts of money under management.  The excessive fees led to lower net returns than participants in comparable 401(k) plans enjoyed.

33.     During the Class Period, Defendants breached their duties owed to the Plan, to Plaintiff and all other Plan participants, by: (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories.

34. Defendants' mismanagement of the Plan, to the detriment of Plan participants and beneficiaries, breached the fiduciary duties of prudence and loyalty in violation of 29 U.S.C. § 1104.

A. **Excessive Plan Expenses**

35. There are commercially available programs commonly used by financial advisors and plan fiduciaries to analyze plans' performance, comparative costs and other key indicators.

36. The commercially available programs require validated information because financial information submitted to the federal government, in the 5500 Form, is often incomplete or contains errors. The program used for the analysis below contains validated financial information from more than 55,000 financial plans of all types. The benchmarking analysis is of the type employed by fiduciaries and financial advisors to determine the productivity and efficiency of financial programs and is appropriately used here.

37. Despite the overwhelming evidence that expenses matter and that a fiduciary is obligated to consider expenses in making investment decisions, Defendants did not have a viable methodology for monitoring the expenses of the funds in its Plan. Not only did Defendants maintain a menu of high-fee funds, Defendants excluded many low-fee index funds.

38. During the Class Period (from June 26, 2014 through the date of judgment), Defendants maintained an investment platform that contained 16 active mutual funds, 14 collective trusts, and 12 index mutual fund.

39. The following chart identifies the funds selected by the Benefits Committee under the influence of T. Rowe Price Retirement Plan Services, Inc. ("T. Rowe Price"), the recordkeeper, from the years 2014-2020. The chart also illustrates the broad market indices for the investment options. An appropriate low-cost index fund from Vanguard or other low cost alternative for the

same index is included, which can be used to benchmark the fees and performance of the Defendants' funds.

40.    The Plan Fees that follow are expressed as a percentage of assets under management, or "expense ratio." For example, if the mutual fund share class deducts 1% of fund assets each year in fees, the fund's expense ratio would be 1%, or 100 basis points (or bps). (One basis point is equal to 1/100th of one percent (or 0.01%)). The fees deducted from a mutual fund's assets reduce the value of the shares owned by fund investors. The expense ratios of each fund are recognized by Morningstar as the single most important consideration in fund selection, which is the starting point for analyzing the prudence of Defendants' fund selection process.

| Plan Fund | Defendants' Plan Fee (bps) | Lower-cost Index Fund or Similar Lower Cost Fund | Lower-cost Index Fund or Similar Lower Cost fee (bps) | Defendants' Plan's Excessive Fees (%) |
|---|---|---|---|---|
| T. Rowe Price Retirement 2015 Active Trust C (RXPF04497) | 32 | Vanguard Institutional Target Retirement 2015 (VITVX) | 9 | **256%** |
| T. Rowe Price Retirement 2020 Active Trust C (RXPF04498) | 32 | Vanguard Institutional Target Retirement 2020 (VITWX) | 9 | **256%** |
| T. Rowe Price Retirement 2025 Active Trust C (RXPF04499) | 32 | Vanguard Institutional Target Retirement 2025 (VRIVX) | 9 | **256%** |

| | | | | |
|---|---|---|---|---|
| T. Rowe Price Retirement 2030 Active Trust C (RXPF04500) | 32 | Vanguard Institutional Target Retirement 2030 (VTTWX) | 9 | **256%** |
| T. Rowe Price Retirement 2040 Active Trust C (RXPF04502) | 32 | Vanguard Institutional Target Retirement 2040 (VIRSX) | 9 | **256%** |
| T. Rowe Price Retirement 2045 Active Trust C (RXPF04503) | 32 | Vanguard Institutional Target Retirement 2045 (VITLX) | 9 | **256%** |
| T. Rowe Price Retirement 2050 Active Trust C (RXPF04504) | 32 | Vanguard Institutional Target Retirement 2050 (VTRLX) | 9 | **256%** |
| T. Rowe Price Retirement 2055 Active Trust C (RXPF04505) | 32 | Vanguard Institutional Target Retirement 2055 (VIVLX) | 9 | **256%** |
| T. Rowe Price Retirement 2060 Active Trust C (RXPF04700) | 32 | Vanguard Institutional Target Retirement 2060 (VTTSX) | 9 | **256%** |

| | | | | |
|---|---|---|---|---|
| PIMCO Income Institutional (PIMIX) | 105 | State Street Aggregate Bond Index Portfolio (SSAFX) | 3 | **3400%** |
| American Funds New Perspective R6 (RNPGX) | 42 | Vanguard Total World Stock Index Fund ETF Shares (VT) | 8 | **425%** |
| T. Rowe Price Retirement Balance Trust G (RXPF04701) | 32 | Vanguard Tax Managed Balanced Fund (VTMFX) | 9 | **256%** |

41.     The above is for illustrative purposes only and is not all-inclusive.  The Plan expense ratios are significant multiples of what they should have been given the bargaining power available to the Plan fiduciaries.

**B.     Failure to Monitor the Plan's Recordkeeping Expenses**

42.     The Plan's recordkeeper during the Class Period was T. Rowe Price Retirement Plan Services, Inc. ("T. Rowe Price"). The term "recordkeeping" is a catchall term for the administrative services typically provided to a defined contribution plan by the plan's "recordkeeper."

43.     Beyond simple provision of account statements to participants, it is quite common for the recordkeeper to provide a broad range of services, including claims processing, trustee services, participant education, managed account services, participant loan processing, preparation of disclosures, self-directed brokerage accounts, investment consulting, and general consulting services. Nearly all recordkeepers in the marketplace offer this range of services, and defined

contribution plans have the ability to customize the package of services they receive and have the services priced accordingly. Many of these services can be provided by recordkeepers at very little cost. In fact, several of these services, such as managed account services, self-directed brokerage, and loan processing are often a profit center for recordkeepers.

44.     The market for recordkeeping is highly competitive. As a result of such competition, vendors vigorously compete for business by offering the best price.

45.     The cost of providing recordkeeping services depends on the number of participants in a plan. Plans with large numbers of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee. Because recordkeeping expenses are driven by the number of participants in a plan, the vast majority of plans are charged on a per-participant basis.

46.     Recordkeeping expenses can be paid by the plan sponsor (the employer) directly from plan assets, or indirectly by the plan's investments in a practice known as revenue sharing (or a combination of both or by a plan sponsor). Revenue sharing payments are payments made by investments within the plan, typically mutual funds, to the plan's recordkeeper or to the plan directly, to compensate for recordkeeping and trustee services that the mutual fund company otherwise would have to provide.  Best practice is for the Plan to pay for the expenses directly like they do in a defined benefit plan.

47.     Although utilizing a revenue sharing approach is not *per se* imprudent, unchecked, it could be devastating for Plan participants. "At worst, revenue sharing is a way to hide fees. Nobody sees the money change hands, and very few understand what the total investment expense pays for. It's a way to milk large sums of money out of large plans by charging a percentage-based fee that never goes down (when plans are ignored or taken advantage of). In some cases, employers

and employees believe the plan is 'free' when it is in fact expensive." Justin Pritchard, "Revenue Sharing and Invisible Fees" available at http://www.cccandc.com/p/revenue-sharingand-invisible-fees (last visited May 17, 2020).

48.     Prudent fiduciaries implement related processes to prudently manage and control a plan's recordkeeping costs. *See Tussey v. ABB, Inc.,* 746 F.3d 327, 336 (8th Cir. 2014) (holding that fiduciaries of a 401(k) plan "breach[] their fiduciary duties" when they "fail[] to monitor and control recordkeeping fees" incurred by the plan); *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 800 (7th Cir. 2011) (explaining that defined contribution plan fiduciaries have a "duty to ensure that [the recordkeeper's] fees [are] reasonable").

49.     First, a plan fiduciary must pay close attention to the recordkeeping fees being paid by the plan. A prudent fiduciary tracks the recordkeeper's expenses by demanding documents that summarize and contextualize the recordkeeper's compensation, such as fee transparencies, fee analyses, fee summaries, relationship pricing analyses, cost-competitiveness analyses, and multi-practice and standalone pricing reports.

50.     Second, to make an informed evaluation as to whether a recordkeeper or other service provider is receiving no more than a reasonable fee for the services provided to a plan, a prudent fiduciary must identify all fees, including direct compensation and revenue sharing being paid to the plan's recordkeeper. To the extent that a plan's investments pay asset-based revenue sharing to the recordkeeper, prudent fiduciaries monitor the amount of the payments to ensure that the recordkeeper's total compensation from all sources does not exceed reasonable levels, and require that any revenue sharing payments that exceed a reasonable level be returned to the plan and its participants.

51.     Defendants failed to prudently manage and control the Plan's recordkeeping and administrative costs by failing to undertake any of these steps because, among other things, there is no evidence that Defendants negotiated lower recordkeeping costs. The total amount of recordkeeping fees paid throughout the Class Period on a per participant basis was unreasonable.

52.     From the years 2014 to 2018, recordkeeping costs paid to T. Rowe Price, as disclosed on the 5500 Forms, rose 500% from around $1,000,000 per year in 2014, to $6,000,000 per year in 2018, while number of participants only went up 21%. Although these costs on the surface are already unreasonable, these costs could actually be higher due to revenue sharing arrangements and indirect compensation.

53.     Certain Plan investments are shares of registered investment companies, benefit-responsive investment contracts, and common commingled trust funds managed by T. Rowe Price. T. Rowe Price is also the trustee and record keeper as defined by the Plan. Therefore, these transactions qualify as party-in-interest transactions.

54.     In recent defined contribution plan excessive fee litigation, *Ramos v. Banner Health*, 2020 WL 2553705 (D. Colo. May 20, 2020) (bench trial),  the Court found it "highly significant" that Defendant went nearly twenty years without soliciting competitive bids for recordkeeping services through a request for proposal. The Court also agreed with plan participants that the plan's prior recordkeeping arrangement—in which the plan paid uncapped, asset-based fees to Fidelity through a contract with no termination date—warranted closer scrutiny by the Defendant's plan committee.  In that case, the Plan committee "never assessed the reasonableness of fees using any form of a competitive bid process, RFP or otherwise."  Upon information and belief, Defendants did not use a competitive bid process for recordkeeping services for a substantial period of time.

55.     Upon information and belief, T. Rowe Price received multiple income streams for recordkeeping from the Plan for selecting mutual funds that paid excessive revenue sharing fees.

**C.    Failure to Use Lower-Cost, Passively Managed Funds**

56.     As noted above, ERISA is derived from trust law. *Tibble I*, 135 S. Ct. at 1828. Accordingly, appropriate investments for a fiduciary to consider are "suitable index mutual funds or market indexes (with such adjustments as may be appropriate)." Restatement (Third) of Trusts § 100 cmt. b(1).

57.     While higher-cost mutual funds may outperform a less-expensive option, such as a passively managed index fund, over the short term, they rarely do so over a longer term. *See* Jonnelle Marte, Do Any Mutual Funds Ever Beat the Market? Hardly, The Washington Post, available at https://www.washingtonpost.com/news/get-there/wp/2015/03/17/do-any-mutualfunds-ever-beat-the-market-hardly/ (citing a study by S&P Dow Jones Indices that looked at 2,862 actively managed mutual funds, focused on the top quartile in performance and found most did not replicate performance from year to year); *see also* Index funds trounce actively managed funds: Study, available at http://www.cnbc.com/2015/06/26/index-funds-trounce-activelymanaged-funds-study.html ("long-term data suggests that actively managed funds "lagged their passive counterparts across nearly all asset classes, especially over the 10-year period from 2004 to 2014.")

58.     Funds with high fees on average perform worse than less expensive funds, even on a pre-fee basis. Javier Gil-Bazo & Pablo Ruiz-Verdu, When Cheaper is Better: Fee Determination in the Market for Equity Mutual Funds, 67 J. Econ. Behav. & Org. 871, 873 (2009) (hereinafter "When Cheaper is Better"); see also Jill E. Fisch, Rethinking the Regulation of Securities

Intermediaries, 158 U. Pa. L. Rev. 1961, 1967-75 (2010) (summarizing numerous studies showing that "the most consistent predictor of a fund's return to investors is the fund's expense ratio").

59.     The Plan has retained several actively managed funds as Plan investment options despite the fact that these funds charged grossly excessive fees compared with comparable or superior alternatives, and despite ample evidence available to a reasonable fiduciary that these funds had become imprudent due to their higher costs relative to the same or similar investments available.

60.     This fiduciary failure decreased participant compounding returns and reduced the available amount participants will have at retirement.

61.     During the Class Period, the Plan lost millions of dollars by offering investment options that had similar or identical characteristics to other lower-priced investment options. Defendants failed to consider materially similar but cheaper alternatives to the Plan's investment options. A reasonable investigation would have revealed the existence of these lower-cost alternatives. The chart below demonstrates that the expense ratios of the Plan's investment options were more expensive by significant multiples of comparable passively managed funds in the same investment style:

| Fund in Plan | Net Expense Ratio | Passive Alternative | Net Expense Ratio | % Excess Fees |
|---|---|---|---|---|
| T. Rowe Price Retirement 2015 Active Trust C (RXPF04497) | 32 | Vanguard Institutional Target Retirement 2015 (VITVX) | 9 | **256%** |
| | | | | |

| | | | | |
|---|---|---|---|---|
| T. Rowe Price Retirement 2020 Active Trust C (RXPF04498) | 32 | Vanguard Institutional Target Retirement 2020 (VITWX) | 9 | **256%** |
| T. Rowe Price Retirement 2025 Active Trust C (RXPF04499) | 32 | Vanguard Institutional Target Retirement 2025 (VRIVX) | 9 | **256%** |
| T. Rowe Price Retirement 2030 Active Trust C (RXPF04500) | 32 | Vanguard Institutional Target Retirement 2030 (VTTWX) | 9 | **256%** |
| T. Rowe Price Retirement 2040 Active Trust C (RXPF04502) | 32 | Vanguard Institutional Target Retirement 2040 (VIRSX) | 9 | **256%** |
| T. Rowe Price Retirement 2045 Active Trust C (RXPF04503) | 32 | Vanguard Institutional Target Retirement 2045 (VITLX) | 9 | **256%** |
| T. Rowe Price Retirement 2050 Active Trust C (RXPF04504) | 32 | Vanguard Institutional Target Retirement 2050 (VTRLX) | 9 | **256%** |
| T. Rowe Price Retirement 2055 Active Trust C (RXPF04505) | 32 | Vanguard Institutional Target Retirement 2055 (VIVLX) | 9 | **256%** |
| | | | | |

| | | | | |
|---|---|---|---|---|
| PIMCO Income Institutional (PIMIX) | 105 | State Street Aggregate Bond Index Portfolio (SSAFX) | 3 | **3400%** |
| American Funds New Perspective R6 (RNPGX) | 42 | Vanguard Total World Stock Index Fund ETF Shares (VT) | 8 | **425%** |
| T. Rowe Price Retirement Balance Trust G (RXPF04701) | 32 | Vanguard Tax Managed Balanced Fund (VTMFX) | 9 | **256%** |

**\* Plans smaller than Costco have negotiated target date fees in Vanguard Collective Trusts for six basis points and less.**

62.     These results are not surprising given that in the long-term, actively managed funds do not outperform their passively managed counterparts. Indeed, the majority of U.S. equity funds did not outperform their index counterparts in the five years ending June 30, 2019. The Plan's fiduciaries cannot justify selecting actively managed funds over passively managed ones. While higher-cost mutual funds may outperform a less-expensive option such as a passively managed index fund over the short term, they rarely do so over a longer term. With regard to this action in particular, there is objective evidence that selection of actively managed funds over passively managed ones with materially similar characteristics was unjustified.

63.     Plaintiff had no knowledge of Defendants' process for selecting investments and monitoring them to ensure they remained prudent. Plaintiff also had no knowledge of how the fees charged to and paid by the Plan participants compared to any other funds. Nor did Plaintiff know about the availability of lower-cost and better-performing (and other essentially identical)

investment options that Defendants did not offer because Defendants provided no comparative information to allow Plaintiff to evaluate and compare Defendants' investment options.

## THE OVERCHARGES BREACHED
## DEFENDANTS' FIDUCIARY OBLIGATIONS TO THE PLAN

64.     The administrative fees of the investment offerings were paid for by the Plan participants. Defendants, as fiduciaries, were responsible for ensuring that these administrative fees were reasonable.

65.     A plan's fiduciaries have control over defined contribution plan expenses. The fiduciaries have exclusive control over the menu of investment options to which participants may direct the assets in their accounts. Those selections each have their own fees, which are deducted from the returns that participants receive on their investments.

66.     At retirement, employees' benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses. Accordingly, unreasonable fees can impair the value of a participant's account. Over time, even small differences in fees and performance can result in large differences in the amount of savings available at retirement.

67.     Prudent fiduciaries exercising control over administration of a plan and the selection and monitoring of designated investment alternatives will take steps to minimize plan expenses by hiring low-cost service providers and by curating a menu of low-cost investment options. *See,* Restatement (Third) of Trusts § 90 cmt. b ("[C]ost-conscious management is fundamental to prudence in the investment function. . . .").

68.     Additional fees of between .2% to .4%, as an example, can significantly affect a participant's investment over time because "[b]eneficiaries subject to higher fees … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion

of their investment spent on unnecessary fees would have earned over time." *Tibble*, 843 F.3d 1187, 1190 (9th Cir. 2016) ("*Tibble III*"); *see also id.* at 1198 ("It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks…").

69.     The duty of prudence imposed under 29 U.S.C. § 1104(a)(1)(B) is a codification of the common law prudent investor rule found in trust law.

70.     Given the significant variation in total plan fees attributable to plan size, the reasonableness of administrative expenses and investment management expenses should be determined by comparison to other similarly-sized plans. *See* 29 U.S.C. § 1104(a)(1)(B) (requiring ERISA fiduciaries to discharge their duties in the manner "that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character").

71.     A fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants. A plan fiduciary cannot assume that an investment that began as a prudent one will remain so, particularly when the original circumstances change, or the investment reveals itself to be deficient. An ERISA fiduciary's investment decisions also must account for changed circumstances and a trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.

72.     As illustrated above, the Plan's administrative fees could in many cases be significantly reduced simply by electing a different share class offered by the same issuer, or substantially identical fund from a different issuer, and are consistently well above its comparator peers, regardless whether the comparison is based on cost per participant or percentage of assets.

73.     Prudent fiduciaries of large defined contribution plans must conduct an analysis to determine whether investments will outperform their benchmark net of fees. Prudent fiduciaries

then make a reasoned decision as to whether it is in participants' best interest to offer specific funds or share classes for the particular investment style and asset class.

74.     Prudent fiduciaries of defined contribution plans continuously monitor the investment performance of plan options against applicable benchmarks and peer groups to identify underperforming investments. Based on this process, prudent fiduciaries replace those imprudent investments with better-performing and reasonably priced options.

75.     The fiduciary task of evaluating investments and investigating comparable alternatives in the marketplace is made much simpler by the introduction of independent research companies such as Morningstar, which sort mutual funds of all categories "based on the underlying securities in each portfolio… We place funds in a given category based on their portfolio statistics and compositions over the past three years." www.morningstar.com/InvGlossary/Morningstar_category.aspx.

76.     Defendants are not a prudent fiduciary of the Plan because they did not make a reasoned decision to offer specific funds or share classes to the Plan participants as described herein.

77.     Defendants are not a prudent fiduciary of the Plan because they failed to continuously monitor the investment performance of its plan options against applicable benchmarks and peer groups, and they failed to identify and replace underperforming investments with better-performing and reasonably priced options.

78.     Investment options should not favor the fund provider over the Plan's participants. Yet here, to the detriment of the Plan and its participants and beneficiaries, Defendants included

and retained in the Plan many mutual fund investments that were more expensive than necessary and otherwise not justified based on their economic value to the Plan.

79.     Based on reasonable inferences from the facts set forth herein, during the class period Defendants failed to have an independent system of review in place to ensure that the Plan participants were charged appropriate and reasonable fees for the Plan's investment options. Additionally, Defendants failed to leverage the size of the Plan to negotiate lower expense ratios for certain investment options maintained and/or added to the Plan during the class period.

## CLASS ACTION ALLEGATIONS

80.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

81.     In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representatives of, the following Class:

> All participants and beneficiaries  of the Costco 401(k) Retirement Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning six years before the commencement of this action and running through the date of judgment.

82.     The Class includes more than 174,403 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

83.     There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

- Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether Defendants breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

84. Plaintiff's claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiff was a participant during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

85. Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they are participants in the Plan during the Class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

86. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of: (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a); and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

87. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so

that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

88.     Plaintiff's counsel is experienced in complex ERISA and class litigation and will adequately represent the Class.

89.     The claims brought by the Plaintiff arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts. The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in individual participants' plans. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a plan for breaches of fiduciary duty.

90.     Under ERISA, an individual "participant" or "beneficiary" are distinct from an ERISA plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the plan.

91.     Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a plan administrator's decision – does not exist here because courts will not defer to plan administrator's legal analysis and interpretation.

## FIRST CLAIM FOR RELIEF - BREACH OF DUTIES OF LOYALTY AND PRUDENCE

92.     Plaintiff restates the above allegations as if fully set forth herein.

93.     Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1). They are responsible for selecting prudent investment options, ensuring that those options charge only reasonable fees, and taking any other necessary steps to ensure that the Plan's assets are invested prudently. Defendants had a continuing duty to evaluate and monitor the Plan's investments on an ongoing basis and to "remove imprudent ones" regardless of how long a fund has been in the plan. *Tibble,* 135 S. Ct. at 1829.

94.     29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty upon Defendants in their administration of the Plan. The scope of the fiduciary duties and responsibilities of Defendants include managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the care, skill, diligence, and prudence required by ERISA. These duties further required Defendants to independently assess whether each option was a prudent choice for the Plan. *DiFelice v. U.S. Airways, Inc*., 497 F.3d 410, 423 (4th Cir. 2007); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 590, 595–96 (8th Cir. 2009).

95.     Defendants were directly responsible for ensuring that the Plan's fees were reasonable, selecting investment options in a prudent fashion in the best interest of Plan participants, prudently evaluating and monitoring the Plan's investments on an ongoing basis and eliminating funds or share classes that did not serve the best interest of Plan participants, and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

96.     Defendants failed to employ a prudent and loyal process by failing to critically or objectively evaluate the cost and performance of the Plan's investments and fees in comparison to other investment options. Defendant selected and retained for years as Plan investment options

mutual funds with high expenses relative to other investment options that were readily available to the Plan at all relevant times.

97.     Defendants failed to engage in a prudent process for monitoring the Plan's investments and removing imprudent ones within a reasonable period. This resulted in the Plan continuing to offer unreasonably expensive funds and share classes compared to equivalent and/or comparable low-cost alternatives that were available to the Plan. Through these actions and omissions, Defendants failed to discharge its duties with respect to the Plan in violation of its fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

98.     Defendants failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

99.     Defendants are liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the breaches, to restore to the Plan any profits defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition, Defendants are subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).

### SECOND CLAIM FOR RELIEF – FAILURE TO ADEQUATELY MONITOR OTHER FIDUCIARIES

100.    Plaintiff restates the above allegations as if fully set forth herein.

101.    Defendants had the authority to appoint and remove members of the Benefits Committee and were aware that the Benefits Committee had critical responsibilities as fiduciaries of the Plan.

102.    In light of this authority, Costco had a duty to monitor the Benefits Committee to ensure that the Benefits Committee was adequately performing its fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Benefits Committee was not fulfilling those duties.

103.    Costco also had a duty to ensure that the Benefits Committee possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's investments; and reported regularly to Costco.

104.    Costco breached its fiduciary duties by, among other things:

a.      Failing to monitor and evaluate the performance of the Benefits Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses in the form of unreasonably high expenses, choices of fund's class of shares, and inefficient fund management styles that adversely affected the investment performance of the funds' and their participants' assets as a result of the Administrative Committee imprudent actions and omissions;

b.      Failing to monitor the process by which Plan investments were evaluated, and failing to investigate the availability of lower-cost share classes; and

c.      Failing to remove Benefits Committee members whose performance was inadequate in that they continued to maintain imprudent, excessively costly, and

poorly performing investments within the Plan, and caused the Plan to pay excessive recordkeeping fees, all to the detriment of the Plan and Plan participants' retirement savings.

105.     As the consequences of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars of losses.  Had Costco complied with its fiduciary obligations, the Plan would not have suffered the losses, and Plan participants would have had more money available to them in retirement.

106.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Costco is liable to restore to the Plan all loses caused by their failure to adequately monitor the Benefits Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.     A determination that this action may proceed as a class action under Rule  23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B.     Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel;

C.     A Declaration that the Defendants have breached their fiduciary duties under ERISA;

D.     An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty, including restoring to the Plan all losses resulting from imprudent investment of the Plan's assets, restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligation;

E.     An Order requiring the Defendant Costco to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(2) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against Costco as necessary to effectuate said relief, and to prevent Costco's unjust enrichment;

F.      An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties;

G.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan fiduciaries deemed to have breached their fiduciary duties;

H.      An award of pre-judgment interest;

I.      An award of costs pursuant to 29 U.S.C. § 1132(g);

J.      An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

K.      Such other and further relief as the Court deems equitable and just.

Dated this 23rd day of June, 2020

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

s/ ***Paul M. Secunda*** .
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
Paul M. Secunda, State Bar No. 1074127

WALCHESKE & LUZI, LLC
15850 W. Bluemound Rd., Suite 304
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: psecunda@walcheskeluzi.com