UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

DUSTIN S. SOULEK, individually, and
as representative of a Class of Participants
and Beneficiaries, on Behalf of the Costco
401(k) Retirement Plan;

        Plaintiff,                           Case No. 1:20-cv-937-WCG

    v.

COSTCO WHOLESALE CORPORATION, *et al.*

        Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES, COSTS, AND CLASS
REPRESENTATIVE COMPENSATION AWARD**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION .............................................................................. 1

BACKGROUND ................................................................................ 2

   I.    PLEADINGS AND MOTION TO DISMISS ........................... 2

   II.   MEDIATION AND SETTLEMENT ...................................... 3

   III.  SETTLEMENT TERMS AND PRELIMINARY APPROVAL ........... 3

   IV.  WORK OF CLASS COUNSEL ........................................ 4
       A.   Work Conducted to Date ........................................ 4
       B.   Remaining Work to Be Performed ............................. 5

   V.   WORK OF CLASS REPRESENTATIVES ............................ 6

   VI.  WORK OF THE SETTLEMENT ADMINISTRATOR AND INDEPENDENT FIDUCIARY ............................................................. 6

   VII. REQUESTED ATTORNEYS' FEES AND COSTS, ADMINISTRATIVE EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS ......... 7

ARGUMENT ...................................................................................... 8

   I.    STANDARD OF REVIEW ................................................ 8

   II.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES. 8
       A.   The Market Rate for Complex ERISA Actions Is Well-Established ......... 9
       B.   29.4% of the Common Fund Is a Reasonable Fee in this Case ............... 11
          1.   The Quality of the Attorneys' Performance ........................ 12
          2.   The Risk of Nonpayment and the Stakes of the Case ............... 13
          3.   The Amount of Work Necessary to Resolve the Litigation ........... 14

   III. THE COURT SHOULD APPROVE THE REQUESTED COSTS ............... 15

   IV. THE COURT SHOULD APPROVE THE REQUESTED CLASS REPRESENTATIVE COMPENSATORY AWARD ................................... 16

CONCLUSION ................................................................................. 17

CERTIFICATE OF SERVICE ............................................................ 18

Case 1:20-cv-00937-WCG   Filed 05/18/22   Page 2 of 24   Document 54-1

CASES

*Abbott v. Lockheed Martin Corp.*,
  2015 WL 4398475 (S.D. Ill. July 17, 2015) ..................................................12, 13, 16

*Allegretti v. Walgreen Co.*,
  2022 WL 484216 (N.D. Ill. Jan. 4, 2022), *aff'd* Dkt. 116 (Feb. 16, 2022) .....12, 13, 16

*Beesley v. Int'l Paper Co.*,
  2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ......................................................10, 12, 13

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
  2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ................................................................10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472, 478 (1980) ................................................................................................8

*Brewer v. Molina Healthcare, Inc.*,
  2018 WL 2966956 (N.D. Ill. June 12, 2018) .......................................................9, 16, 17

*Briggs v. PNC Fin. Servs. Grp., Inc.*,
  2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ..............................................................16

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
  897 F.3d 825 (7th Cir. 2018) ........................................................................................11

*Castillo v. Noodles & Co.*,
  2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) ...............................................................9

*Chesemore v. Alliance Holdings, Inc.*,
  2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) .............................................................17

*City of Detroit v. Grinnell*,
  495 F.2d 448 (2d Cir. 1974) .........................................................................................14

*Diebold ex rel. ExxonMobil Sav. Plan v. N. Tr. Invs., N.A.*,
  No. 1:09-cv-01934, Dkt. 285 (N.D. Ill. Aug. 10, 2015) ..........................................10, 16

*Dobbs v. DePuy Orthopaedics, Inc.*,
  885 F.3d 455 (7th Cir. 2018) .........................................................................................9

*George v. Kraft Foods Glob., Inc.*,
  2012 WL 13089487 (N.D. Ill. June 26, 2012) ..................................................... passim

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ...................................................9

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
  280 F.R.D. 388 N.D. Ill. 2011) ........................................................................17

*Hughes v. Northwestern Univ.*,
  142 S. Ct. 737 (2022) .........................................................................................3

*In re Comdisco Sec. Litig.*,
  150 F. Supp. 2d 943 (N.D. Ill. 2001) ..............................................................14

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ..............................................................9, 11, 15

*Karpik v. Huntington Bancshares, Inc.*,
  2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ...........................................12, 16

*Kirchoff v. Flynn*, 786 F.2d 320
  (7th Cir. 1986) .............................................................................................9, 11

*Koerner v. Copenhaver*,
  1:12-cv-01091, Dkt. 82 (C.D. Ill. Jan. 12, 2015) ..........................................10

*Krueger v. Ameriprise Fin., Inc.*,
  2015 WL 4246879 (D. Minn. July 13, 2015) .............................................10, 12

*Kruger v. Novant Health*,
  2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ...........................................10, 12

*Kujat v. Roundy's Supermarkets Inc.*,
  2021 WL 4551198 (N.D. Ill. Aug. 11, 2021) ...................................................9

*Martin v. Caterpillar Inc.*,
  2010 WL 11614985 (C.D. Ill. Sept. 10, 2010) ....................................... passim

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012).................................................17

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970).............................................................................................8

Case 1:20-cv-00937-WCG   Filed 05/18/22   Page 4 of 24   Document 54-1

*Nolte v. Cigna Corp.*,
  2013 WL 12242015 (C.D. Ill. Oct. 15, 2013) ........................................................ 10, 16

*Pledger v. Reliance Tr. Co.*,
  2021 WL 2253497 (N.D. Ga. Mar. 8, 2021) ........................................................... 12, 15

*Ramsey v. Philips N. Am., LLC*,
  No. 3:18-cv-01099, Dkt. 27 (S.D. Ill. Oct. 15, 2018) .................................................. 10

*Reetz v. Lowe's Cos.*,
  2021 WL 4771535 (W.D.N.C. Oct. 12, 2021) ......................................................... 13, 16

*Rozo v. Principal Life Ins. Co.*,
  2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) ............................................................... 13

*Sims v. BB&T Corp.*,
  2019 WL 1993519 (M.D.N.C. May 6, 2019) ............................................................... 15

*Spano v. Boeing Co.*,
  2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) .................................................... 10, 13, 15

*Steiner v. Am. Broad. Co.*,
  248 Fed. App'x. 780 (9th Cir. 2007) ........................................................................... 15

*Stevens v. SEI Investment Co.*,
  2020 WL 996418 (E.D. Pa. Feb. 28., 2020) ............................................................... 15

*Taubenfeld v. AON Corp.*,
  415 F.3d 597 (7th Cir. 2005) .................................................................................. 8, 11

*Tussey v. ABB, Inc.*,
  2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ............................................................ 10

*Wickens v. Thyssenkrupp Crankshaft Co.*,
  2021 WL 267852 (N.D. Ill. Jan. 26, 2021) .................................................................... 8

*Will v. Gen. Dynamics Corp.*,
  2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...................................................... 9, 10, 14

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) ...................................................................................... 14

*Wolfe v. TCC Wireless, LLC*,
  2018 WL 11215318 (N.D. Ill. Mar. 12, 2018) ............................................................. 16

*Wright v. Nationstar Mortg. LLC*,
 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ................................................................ 16

## RULES

FED. R. CIV. P. 23(h) ......................................................................................................... 8

## REGULATIONS

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed.
 Reg. 33830 ...................................................................................................................... 7

## INTRODUCTION

In light of the Settlement that they have achieved for the participants and beneficiaries of the Costco 401(k) Retirement Plan ("Plan") at issue in this case, Plaintiff and Class Counsel respectfully petition the Court to approve: (1) attorneys' fees to Class Counsel in the amount of $1,500,000 (29.4% of the $5.1 million Gross Settlement Amount); (2) reimbursement of $25,405.04 in litigation costs; and (3) a class representative service award in the amount of $10,000 to the named Plaintiff.

As discussed below, the requested distributions are appropriate and reasonable in comparison to awards in similar cases. Class Counsel's requested fee is authorized under the Settlement Agreement, *see Settlement Agreement, Dkt. 50-1, ¶ 8.1*, and is consistent with the amount typically awarded in complex ERISA cases such as this. Likewise, the proposed $10,000 service award is also authorized under the Settlement, *see id., ¶ 8.2*, and well within the bounds of what has been approved in other ERISA cases. Finally, the requested litigation costs are typical and reasonable in comparison to other cases. Accordingly, Plaintiff and Class Counsel respectfully request that the Court approve the requested distributions.

As of the date of this motion, no Class Member has objected to the proposed distributions. Defendants take no position directly or indirectly on Class Counsel's application for attorneys' fees and expenses because Class Counsel has not sought an award of attorneys' fees that exceed $1,500,000 (one million, five hundred thousand dollars), litigation costs and expenses that exceed $40,000 (forty thousand dollars), and has not requested Class Representative's Compensation in an amount that exceeds

1

$10,000. *Settlement Agreement, ¶¶ 8.1-8.2.*

**BACKGROUND**

## I.  PLEADINGS AND MOTION TO DISMISS

Plaintiff Dustin S. Soulek, individually, and as representative of a Class of Participants and Beneficiaries of the Costco 401(k) Retirement Plan ("Plaintiff"), filed this action on June 23, 2020, *Dkt. 1*, and filed an Amended Complaint on September 21, 2020. *Dkt. 20*. In his Amended Complaint, Plaintiff alleges that during the putative Class Period (June 23, 2014 through the date of judgment), Defendants, as fiduciaries of the Plan, breached the duties they owed to the Plan, to Plaintiff, and to the other Participants of the Plan by, among other things: (1) authorizing the Plan to pay objectively unreasonable fees for recordkeeping and administration (RK&A); (2) failing to objectively, reasonably, and adequately review the Plan's investment portfolio with due care to ensure that each investment share class was prudent, in terms of cost; and (3) maintaining certain funds in the Plan despite the availability of identical or similar investment share classes with lower costs. *Id.*

On October 16, 2020, Defendants filed a motion to dismiss the Amended Complaint, *Dkts. 25-27*, and between November 6, 2020, and December 4, 2020, Plaintiff subsequently opposed that motion, *Dkts. 28-29*, Defendants replied in further support of their motion, *Dkt. 30*, Plaintiff surreplied in further opposition, *Dkt. 31*, and Defendants responded in opposition to Plaintiff's surreply. *Dkt. 32*.

The Court heard oral argument on Defendants' motion on December 21, 2020. *Dkt. 33*. Between June 1, 2021 and July 29, 2021, the Parties filed notices of supplemental

2

authority. *Dkts. 35-39.* On September 30, 2021, the Court stayed the case in light of the then-pending decision of the United States Supreme Court in *Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022). While this stay was in place, the Parties decided to attempt mediation of the matter.

## II.     MEDIATION AND SETTLEMENT

The Parties engaged in a full-day mediation with a neutral mediator, Robert Meyer, on January 12, 2022. *Declaration of Paul Secunda in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Secunda Decl.")* ¶ 10. After extensive, arm's length negotiations, including weeks of negotiations between the Parties after the mediation concluded, the Parties reached a Memorandum of Understanding as to Settlement of All Claims on February 17, 2022.

## III.     SETTLEMENT TERMS AND PRELIMINARY APPROVAL

Under the Settlement, Costco's obligation is "to ensure that the Plan Administrative Service Per Capita Recordkeeping Fee deducted from Plan accounts does not exceed $3.25 per Plan account per quarter" and that obligation "continue[s] for the number of calendar quarters necessary for the value of the reduction of the Plan Administrative Service Per Capita Recordkeeping Fee amount to total $3,200,000 (three million, two hundred thousand dollars)." *Settlement Agreement, ¶ 5.2.* Additionally, Costco will deposit $400,000 (four hundred thousand dollars) into the Former Participant Pool." *Id. ¶ 6.4.* The Settlement Administrator will cause the Former Participant Pool to be allocated and distributed in accordance with the Plan of Allocation set forth in Article 7 of the Settlement Agreement and as ordered by the

3

Court. *Id.* ¶ *7.1.*

Plaintiff filed a motion seeking preliminary approval of the Settlement on March 14, 2022. *Dkts. 48, 49, 50-1.* The Court entered an Order of preliminary approval of the Settlement Agreement on March 17, 2022. *Dkt. 52.* Plaintiff is filing the present motion at least thirty (30) calendar days before the deadline set in the Preliminary Order for objections to the proposed settlement (June 17, 2022.) *Settlement Agreement* ¶ *8.3.* To date, no objections to the Settlement or the requested distributions have been received. *Declaration of Paul Secunda in Support of Motion for Attorneys' Fees and Costs and Class Representative Compensatory Awards ("Secunda Decl. for Attorneys' Fees") ¶ 33.*

## IV.    WORK OF CLASS COUNSEL

Class Counsel have expended significant time and effort prosecuting this action and achieving the Settlement on behalf of the Class. This work is detailed in the accompanying declaration from Class Counsel, and is briefly summarized below.

### A.    Work Conducted to Date

Prior to filing this action, Class Counsel undertook an extensive investigation of the factual and legal bases for Plaintiff's claims. *Secunda Decl.* ¶ *8.* Thereafter, Class Counsel vigorously prosecuted the action on behalf of the Class. Among other things, Class Counsel: (1) drafted the initial class action Complaint and the Amended Complaint; (2) met and conferred with Defendants' counsel; (3) reviewed hundreds of pages of Plan documents; (4) fully briefed a motion to dismiss filed by Defendants, including sur-replies, notices of supplemental authority, and oral argument before the Court; (5)

4

drafted a written mediation statement; (6) participated in a full-day mediation with Defendants; (7) engaged in extensive negotiations with Defendants' counsel over the eventual settlement Memorandum of Understanding and Settlement Agreement; and (8) consulted with the Class Representative throughout the course of the case. *Secunda Decl. for Attorneys' Fees, ¶ 17.*

Class Counsel also have undertaken considerable work in connection with the Settlement and settlement administration. This has included: (1) drafting the Settlement Agreement and exhibits thereto; (2) preparing Plaintiff's Preliminary Approval Motion papers; (3) reviewing the bid from the Settlement Administrator; (4) reviewing the final draft of the Settlement Notices, and ensuring that they were timely mailed; (5) working with the Settlement Administrator to create a settlement website and telephone support line for Class Members; (6) communicating with Class Members; and (7) preparing the present motion. *Id.*

### B. Remaining Work to Be Performed

Class Counsel's work on this matter remains ongoing. Prior to the Fairness Hearing, Class Counsel will communicate with the Independent Fiduciary as part of its review of the proposed Settlement on behalf of the Plan, draft Plaintiff's motion for final approval of the Settlement, and respond to any objections. *Secunda Decl. for Attorneys' Fees ¶ 17.* Class Counsel will then attend the Fairness Hearing and, if final approval is granted, supervise the distribution of payments to Class Members. *Id.* In addition, Class Counsel will continue to respond to questions from Class Members and take any other actions necessary to support the Settlement until the end of the

5

Settlement Period. *Id.*

## V. WORK OF CLASS REPRESENTATIVE

The Class Representative, Mr. Soulek, also has worked to advance the interests of the class. Among other things, the Class Representative: (1) reviewed the allegations in the Complaint bearing his name; (2) provided information to counsel in connection with the lawsuit; (3) communicated with counsel regarding the litigation and Settlement; and (4) reviewed the Settlement Agreement in its entirety. *Id. ¶ 31 see also Dkt. 51* (Class Representative Declaration.)

## VI. WORK OF THE SETTLEMENT ADMINISTRATOR AND INDEPENDENT FIDUCIARY

In order to be administered and effectuated, the Settlement also requires time, resources, and expertise from several non-parties. Analytics, as the approved Settlement Administrator for the Plan's former Participants, disseminated the Settlement Notices to Former Participant Class Members, and established the settlement website and telephone support line for them. *Dkt. 50-1, ¶¶ 3, 5; Settlement Agreement ¶ 2.32; Secunda Decl. for Attorneys' Fees ¶ 28.* Analytics also will implement the plan of allocation and coordinate distribution of payments to Former Class Members in the event that the Settlement receives final approval. *Settlement Agreement ¶ 7.1.* Analytics will hold the monies for the Former Participants in the Settlement Fund while approval of the Settlement and distributions to Class Members is pending. *See id. ¶¶ 6.1-6.9; Secunda Decl. for Attorneys' Fees ¶ 28.* Upon final approval of the Settlement, Analytics will release

6

these funds to Former Participants. *Settlement Agreement ¶ 7.4.*

Finally, the Independent Fiduciary (Fiduciary Counselors) will review the Settlement, and independently determine whether it is in the best interest of the Plan to release the claims against Defendants in exchange for the relief provided. *Secunda Decl. for Attorneys' Fees ¶ 29*. This independent review is called for by DOL regulations,[1] and is also required by Paragraphs 2.25 and Paragraph 3.1 (inclusive of subparts) of the Settlement Agreement.

## VII.  REQUESTED ATTORNEYS' FEES AND COSTS, ADMINISTRATIVE EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

In consideration of the work and expenses summarized above, the Settlement provides that Plaintiff may seek (1) reasonable attorneys' fees of no more than one-third of the Gross Settlement Amount or $1,500,000; (2) reasonable litigation costs of no more than $40,000; and (3) service awards of up to $10,000 for the Class Representative. *Settlement Agreement ¶¶ 8.1-8.4.* Accordingly, Plaintiff seeks the following amounts in connection with this motion:

- Attorneys' fees: $1,500,000.00 (29.4% of the Settlement Fund)
- Litigation Expenses: $25,405.04
- Class Representative Service Award: $10,000 total

---

[1] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

7

## ARGUMENT

### I.    STANDARD OF REVIEW

When counsel obtain a settlement for a class, courts "may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Here, the requested distributions are authorized both under Article 8 of the Settlement, *see Settlement Agreement ¶¶ 8.1-8.4*, and by applicable law.

The United States Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund [for the benefit of a class] is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Likewise, "reasonable expenses of litigation" may be recovered from a common fund, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970), as well as administrative expenses of settlement, see *Wickens v. Thyssenkrupp Crankshaft Co.*, 2021 WL 267852, at *2 (N.D. Ill. Jan. 26, 2021.) Finally, class representative service awards may be granted in ERISA cases to compensate class representatives for the risks they assumed in enforcing the statute on behalf of the class. *See George v. Kraft Foods Glob., Inc.*, 2012 WL 13089487, at *4 (N.D. Ill. June 26, 2012). In summary, the requested distributions are customary in a class action suit such as this and should be approved for the reasons set forth below.

### II.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES

In a common fund settlement, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate

8

of compensation in the market at the time." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018); *Martin v. Caterpillar Inc.*, 2010 WL 11614985, at *2 (C.D. Ill. Sept. 10, 2010.) Here, Class Counsel's requested fee reflects the market rate for similar services, and is consistent with the rate negotiated in this case and the fees routinely awarded in this Circuit. Accordingly, Plaintiff and Class Counsel respectfully request that the Court approve the requested attorneys' fees.

A.    **The Market Rate for Complex ERISA Actions Is Well-Established**

The market for plaintiffs' attorney work in complex class actions is a contingency fee. *See Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010); *Hale*, 2018 WL 6606079, at *7 (noting "it is essentially unheard of for sophisticated lawyers to take on a case of this magnitude and type on any basis other than a contingency fee, expressed as a percentage of the relief obtained.") A one-third contingency fee is generally considered consistent with the market in the Seventh Circuit, and Plaintiff here seek only 29.4%. *See, e.g., Kujat v. Roundy's Supermarkets Inc.*, 2021 WL 4551198, at *4 (N.D. Ill. Aug. 11, 2021); *Brewer v. Molina Healthcare, Inc.*, 2018 WL 2966956, at *3 (N.D. Ill. June 12, 2018); *Castillo v. Noodles & Co.*, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016); *see also Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and

9

40 percent[.]") (quoting *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)); *Brewer*, 2018 WL 2966956, at *4 (collecting cases); *Hale*, 2018 WL 6606079, at *10 ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation.") (collecting cases.)

Contingency fees awarded in complex ERISA class actions are no exception. In ERISA actions such as this, courts in this Circuit have long recognized that a one-third contingency fee is "fair and reasonable." *Diebold ex rel. ExxonMobil Sav. Plan v. N. Tr. Invs., N.A.*, No. 1:09-cv-01934, Dkt. 285 at *2–3 (N.D. Ill. Aug. 10, 2015); *George*, 2012 WL 13089487, at *2; *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *3 (S.D. Ind. Sept. 4, 2019) (collecting cases).[2] So, a request for 29.4% of the common fund is more than reasonable. Courts across the country agree. *See, e.g., Tussey v. ABB, Inc.*, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) ("Class Counsel's requested one-third fee is common in these cases."); *Kruger v. Novant Health*, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) ("[C]ourts have found that a one-third fee is consistent with the market rate" in complex ERISA class actions."); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) ("[I]n comparing the requested fee with fee awards in similar cases, the relevant comparators are ERISA class actions asserting breaches of fiduciary duties in . . .

---

[2] *See also, e.g., Ramsey v. Philips N. Am., LLC*, No. 3:18-cv-01099, Dkt. 27 at *5 (S.D. Ill. Oct. 15, 2018); *Spano v. Boeing Co.*, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016); *Koerner v. Copenhaver*, 1:12-cv-01091, Dkt. 82 (C.D. Ill. Jan. 12, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014); *Nolte v. Cigna Corp.*, 2013 WL 12242015, at *2 (C.D. Ill. Oct. 15, 2013); *Martin*, 2010 WL 11614985, at *6; *Will*, 2010 WL 4818174, at *4 (all awarding a one-third fee in complex ERISA class actions.)

10

defined contribution plan[s] . . . . In such cases, courts have consistently awarded one-third contingent fees.")

The foregoing authority more than demonstrates that both the local and national market rate for complex ERISA actions is one-third of the gross settlement fund, and Plaintiff's requested fee is lower than that here. The requested fee is also lower than the contingent fee that Plaintiff and Class Counsel agreed upon at the start of the case. *Secunda Decl. for Attorneys' Fees,* ¶ 21 n.1. Accordingly, Plaintiff and Class Counsel respectfully request that the Court approve the 29.4% contingency fee. *See Synthroid*, 264 F.3d at 718 ("[C]ourts must do their best to award counsel the market price for legal services[.]"); *Kirchoff*, 786 F.2d at 324 ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'")

### B. 29.4% of the Common Fund Is a Reasonable Fee in this Case

It is axiomatic that "[e]ven if a settlement is a common fund, the fee award still must be reasonable." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832 (7th Cir. 2018.) Accordingly, the Seventh Circuit has instructed district courts to consider other factors that may bear on the market price for legal fees, such as the quality of the attorney's performance, the risk of nonpayment, the amount of work necessary to resolve the litigation, and the stakes of the case. *See id.* at 833 (citing *Synthroid*, 264 F.3d at 721); *see also Taubenfeld*, 415 F.3d at 599 (citing *Synthroid*, 264 F.3d at 719). Each of these factors also support the reasonableness of Class Counsel's request.

11

1. <u>The Quality of the Attorneys' Performance</u>

This case required significant expertise on the part of Class Counsel. As numerous courts have recognized, ERISA cases such as this are "particularly complex." *Allegretti v. Walgreen Co.*, 2022 WL 484216, at *1 (N.D. Ill. Jan. 4, 2022), *aff'd* Dkt. 116 at *7 (Feb. 16, 2022); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015).[3] Prosecution of ERISA cases requires, among other things, "expertise regarding industry practices" and knowledge of how to obtain and analyze pertinent records. *See Kruger*, 2016 WL 6769066, at *3. Because of the expertise required, "few lawyers or law firms are capable of handling, much less willing to handle, this type of national litigation." *Beesley*, 2014 WL 375432, at *3.

Class Counsel here were well-suited to the challenge. Class counsel (Walcheske Luzi, LLC) is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this. *See Karpik v. Huntington Bancshares, Inc.*, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021). The firm has won favorable rulings in numerous ERISA cases, is currently litigating an appeal before the Seventh Circuit, and has negotiated class action settlements that have received court approval in numerous cases in addition to this case. *Secunda Decl. for Attorneys' Fees, ¶¶ 4–5.*

Ultimately, the quality of Class Counsel's performance is reflected in the

---

[3] *See also Pledger v. Reliance Tr. Co.*, 2021 WL 2253497, at *7 (N.D. Ga. Mar. 8, 2021) ("ERISA litigation of this type is a rapidly evolving, complex, and demanding area of the law.") (citation omitted); *Krueger*, 2015 WL 4246879, at *1 ("ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.")

12

substantial relief obtained for the class. Here, the $5.1 million settlement amount represents, "[b]ased on Plaintiff's estimates, . . . over 16% of the allegedly 'excess' recordkeeping fees paid by the Plans (approximately $30 million)." *Secunda Decl. ¶ 4.* This recovery is on par with numerous other ERISA class action settlements that have been approved across the country. *See Dkt. 49,* at 11 n.6. In short, Class Counsel's expertise benefitted the Class throughout the litigation, provided credibility at the bargaining table, and was instrumental in achieving the result that was obtained. This weighs in favor of awarding the fees requested in this case.

### 2.   The Risk of Nonpayment and the Stakes of the Case

In undertaking to prosecute this complex case on an entirely contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. *See Allegretti,* 2022 WL 484216, at *1. ERISA class cases such as this can extend up to a decade before final resolution,[4] requiring a substantial investment of time and financial resources. *See George,* 2012 WL 13089487, at *2 (describing ERISA litigation as "an exceptional example of a private attorney general risking breathtaking amounts of time and money while overcoming many obstacles for the benefit of employees and retirees"). This is largely a function of the complexity of such cases and the high stakes involved. *See, e.g., Abbott,* 2015 WL 4398475, at *2. Moreover, upon the conclusion of the litigation, a successful outcome was by no means assured.[5] Accordingly, these

---

[4] *See, e.g., Spano,* 2016 WL 3791123, at *1, 4 (9 years); *Abbott,* 2015 WL 4398475, at *1 (8.5 years); *Beesley,* 2014 WL 375432 at *2 (more than 7 years).

[5] *See, e.g., Reetz v. Lowe's Cos.,* 2021 WL 4771535 (W.D.N.C. Oct. 12, 2021) (granting judgment in favor of defendants on ERISA claims following bench trial); *Rozo v. Principal Life Ins. Co.,*

13

factors also support the conclusion that the requested 29.4% fee is reasonable. *See City of Detroit v. Grinnell*, 495 F.2d 448, 470 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.")

### 3. The Amount of Work Necessary to Resolve the Litigation

Although this case was resolved relatively early (due in part to Class Counsel's experience, skill, and reputation), Class Counsel already have invested significant time and effort on the matter. To date, Class Counsel have expended over 350 hours litigating the case, negotiating the settlement, and overseeing settlement administration. *Secunda Decl. for Attorney Fees*, *Ex. 1*. Moreover, Class Counsel will perform additional work going forward in connection with Plaintiff's Final Approval Motion, the Fairness Hearing, and ongoing settlement administration. *See supra* at 5. This work further supports approval of the requested attorneys' fees.

The Court is not required to perform a lodestar cross-check. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011).[6] However, to the extent the Court finds it useful, a lodestar cross-check also supports the requested fee. Here,

---

2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) (same.)

[6] *See also Will*, 2010 WL 4818174, at *3 (describing the use of a lodestar cross-check in common fund cases to be "unnecessary, arbitrary, and potentially counterproductive"); *Martin*, 2010 WL 11614985, at *2, *4 (same); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 948 n.10 (N.D. Ill. 2001) ("To view the matter through the lens of free market principles, [a lodestar analysis] (with or without a multiplier) is truly unjustified as a matter of logical analysis.")

14

Class Counsel's lodestar to date ($221,130.00, exclusive of future work) corresponds to a multiplier of 6.75.[7] *See Secunda Decl. for Attorneys' Fees, ¶ 18 & Ex. 1.* This is within the typical range, and further demonstrates the reasonableness of the requested fee. *See, e.g., Steiner v. Am. Broad. Co.*, 248 Fed. App'x. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Stevens v. SEI Investment Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28., 2020) (approving one-third fee Class Counsel that yielded 6.16 multiplier.)

## III.   THE COURT SHOULD APPROVE THE REQUESTED COSTS

In addition to approving the requested attorneys' fees, this Court also should approve the requested litigation costs and administrative expenses. "[C]ounsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses[.]" *George*, 2012 WL 13089487, at *4. Whether a request for expenses is reasonable is dependent upon what the private market would bear. *Synthroid*, 264 F.3d at 722. Here, the requested costs and expenses are typical for a case such as this, and fall at the low end because of the efficient and timely manner in which the litigation was resolved.

Recoverable litigation costs include "such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile

---

[7] The hourly rates used to calculate Class Counsel's lodestar (and the resulting multiplier) are "reasonable and are comparable to fees that have been recently approved in [other] ERISA class actions." *Sims v. BB&T Corp.*, 2019 WL 1993519, at *3 (M.D.N.C. May 6, 2019) (approving Class Counsel billing rates supporting one-third fee request); *see also Spano*, 2016 WL 3791123, at *3 (adopting rates of $460 to $998 based on experience); *Pledger*, 2021 WL 2253497, at *7 ($490 to $1,060 per hour based on years of experience.)

15

expenses and mediation." *George*, 2012 WL 13089487, at *4; *Martin*, 2010 WL 11614985, at *5 (same). These are precisely the types of costs and expenses for which reimbursement is sought here. *See Secunda Decl. for Attorneys' Fees, ¶¶ 25-27.* Moreover, the total amount of litigation costs ($25,405.04) is limited in comparison to amounts approved in other ERISA actions.[8]

## IV. THE COURT SHOULD APPROVE THE REQUESTED CLASS REPRESENTATIVE COMPENSATORY AWARD

"Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. Accordingly, incentive awards are commonly awarded to those who serve the interests of the class." *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 7018566, at *2 (N.D. Ill. Nov. 29, 2016) (collecting cases). "Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers." *Allegretti*, 2022 WL 484216, at *2 (quoting *Brewer*, 2018 WL 2966956, at *2). Here, the requested $10,000 service award is consistent with those approved by other courts in this Circuit. *See Wolfe v. TCC Wireless, LLC*, 2018 WL 11215318, at *3 (N.D. Ill. Mar. 12, 2018); *Wright v. Nationstar Mortg. LLC*, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (same) (collecting cases). Indeed, much higher awards are frequently

---

[8] See, e.g., *Diebold*, No. 1:09-cv-01934, Dkt. 285 at *2 (approving $260,644.65 in costs); *Nolte*, 2013 WL 12242015, at *4 (approving $928,045.87 in costs); *Karpik*, 2021 WL 757123, at *13 (approving $107,214 administrative expenses); *Reetz*, No. 5:18-cv-00075, Dkt. 263 at *2 (approving request for $203,045 in administrative expenses.)

16

approved in ERISA cases. *See, e.g., Allegretti*, 2022 WL 484216, at *2 (approving $15,000 service awards); *George*, 2012 WL 13089487, at *4 (same); *Abbott*, 2015 WL 4398475, at *4 (approving $25,000 service awards.)

Accordingly, Plaintiff and Class Counsel also respectfully request that the class representative compensatory award be approved. *Brewer*, 2018 WL 2966956, at *2 ("[I]ncentive awards are commonly awarded to those who serve the interests of the class.") (citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases); *Chesemore v. Alliance Holdings, Inc.*, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).)

## CONCLUSION

For the reasons set forth above, Plaintiff and Class Counsel respectfully request that the Court approve the requested distributions from the Settlement Fund.

Respectfully Submitted,

Dated this 18th day of May, 2022
**WALCHESKE & LUZI, LLC**

**s/ Paul M. Secunda**
James A. Walcheske
Scott S. Luzi
Paul M. Secunda
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: psecunda@walcheskeluzi.com

Attorneys for Plaintiff

17

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2022, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: May 18, 2022

<u>**s/Paul M. Secunda**</u>
Paul M. Secunda