UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

DUSTIN S. SOULEK, individually,
and as representative of a Class of
Participants and Beneficiaries, of
the Costco 401(k) Retirement Plan;

      Plaintiff,                       Case No. 20-cv-937

    v.

COSTCO WHOLESALE CORPORATION, *et al.*

      Defendants

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................iii

INTRODUCTION .....................................................................................................1

BACKGROUND .......................................................................................................2

   I.    PROCEDURAL HISTORY ..............................................................................2

        A.    The Pleadings and Motion to Dismiss ..............................................2

        B.    Mediation and Settlement ................................................................3

        C.    Preliminary Approval of the Settlement...........................................4

   II.   OVERVIEW OF SETTLEMENT TERMS .........................................................4

        A.    The Settlement Class.........................................................................4

        B.    Monetary Relief.................................................................................5

        C.    Release of Claims ..............................................................................5

  III.  CLASS NOTICE AND REACTION TO THE SETTLEMENT .............................6

  IV.  REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY...........................8

ARGUMENT............................................................................................................9

   I.    LEGAL STANDARD.......................................................................................9

   II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE...................10

        A.    The Class Representatives and Class Counsel Have Adequately
              Represented the Class ....................................................................10

        B.    Settlement Is the Product of Arm's-Length Negotiations Between
              Experienced, Capable Counsel .......................................................10

        C.    The Settlement Provides Substantial Monetary Relief to the Class .......12

        D.    The Settlement Proceeds Will Be Distributed Equitably and Efficiently 14

        E.    The Class, Independent Fiduciary, and Counsel Support the Settlement
              ................................................................................................15

III. THE CLASS NOTICE PLAN WAS REASONABLE AND EFFECTIVE ............ 16

IV. THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE
SETTLEMENT CLASS ......................................................................................... 17

CONCLUSION ..................................................................................................................... 18

CERTIFICATE OF SERVICE .............................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

Abbott v. Lockheed Martin Corp.,
  3:06-cv-00701, Dkt. 526 (S.D. Ill. July 20, 2015) .......................................................... 14

Allegretti v. Walgreen Co.,
  1:19-cv-05392, Dkt. 116 (N.D. Ill. Feb. 16, 2022) .......................................... 15, 16, 17

Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.,
  2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ........................................................ 10, 11

Beach v. JPMorgan Chase Bank, Nat'l Ass'n,
  No. 17-cv-00563, Dkt. 211 (May 20, 2020), approved 2020 WL 6114545 (S.D.N.Y.
  Oct. 7, 2020) ......................................................................................................... 12

Bhattacharya v. Capgemini N. Am., Inc.,
  No. 1:16-cv-07950, Dkt. 114 (N.D. Ill. Nov. 13, 2018). ...................................... 2, 15

Dolins v. Cont'l Cas. Co.,
  No. 1:16-cv-08898, Dkt. 133 (N.D. Ill. Sept. 20, 2018) ........................................... 11

Eubank v. Pella Corp.,
  2019 WL 1227832 (N.D. Ill. Mar. 15, 2019) ............................................................. 9

Hale v. State Farm Mut. Auto. Ins. Co.,
  2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ............................................................ 14

Hughes v. Northwestern Univ.,
  142 S. Ct. 737 (2022) ................................................................................................. 3

In re Household Int'l, Inc. ERISA Litig.,
  2004 WL 7329911 (N.D. Ill. Nov. 22, 2004) ........................................................... 13

In re Rite Aid Corp. Sec. Litig.,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ....................................................................... 13

In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.,
  2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ....................................................... 14

Isby v. Bayh,
  75 F.3d 1191 (7th Cir. 1996) ........................................................................ 9, 10, 16

Johnson v. Fujitsu Tech. & Bus. of Am., Inc.,
  2018 WL 2183253 (N.D. Cal. May 11, 2018) .......................................................... 12

Lively v. Dynegy, Inc.,
    2008 WL 4657792 (S.D. Ill. Sept. 30, 2008) ............................................................... 15

Loomis v. Exelon Corp.,
    658 F.3d 667 (7th Cir. 2011) ....................................................................................... 13

Nolte v. Cigna Corp.,
    No. 2:07-cv-02046, Dkt. 412 (C.D. Ill. Oct. 15, 2013) ............................................... 16

Phillips Petroleum Co. v. Shutts,
    472 U.S. 797 (1985) ..................................................................................................... 16

Price v. Eaton Vance Corp.,
    No. 18-12098, Dkt. 32 (May 6, 2019), approved Dkt. 57 (D. Mass. Sept. 24, 2019).. 12

Ramos v. Banner Health,
    461 F. Supp. 3d 1067 (D. Colo. 2020), aff'd, 1 F.4th 769 (10th Cir. 2021) ................ 13

Redman v. RadioShack Corp.,
    768 F.3d 622 (7th Cir. 2014) ......................................................................................... 9

Schulte v. Fifth Third Bank,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................... 11, 13, 14

Seiden v. Nicholson,
    72 F.R.D. 201 (N.D. Ill. 1976) ..................................................................................... 14

Sims v. BB&T Corp.,
    2019 WL 1995314 (M.D.N.C. May 6, 2019) ................................................................ 12

Snyder v. Ocwen Loan Servicing, LLC,
    2019 WL 2103379 (N.D. Ill. May 14, 2019) .................................................................. 9

Spano v. Boeing Co.,
    3:06-cv-00743, Dkt. 588 (N.D. Ill. Mar. 31, 2016) ............................................... 14, 16

T.K. Through Leshore v. Bytedance Tech. Co.,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................................................................. 17

Toomey v. Demoulas Super Markets, Inc.,
    No. 1:19-cv-11633, Dkt. 95 (Mar. 24, 2021), approved Dkt. 100 (D. Mass. Apr. 7,
    2021) ............................................................................................................................. 12

Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,
    2018 WL 8334858 (C.D. Cal. July 30, 2018) .............................................................. 12

iv

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
   396 F.3d 96 (2d Cir. 2005) .................................................................................10

Williams v. Rohm & Haas Pension Plan, 2010 WL 1490350
   (S.D. Ind. Apr. 12, 2010), aff'd, 658 F.3d 629 (7th Cir. 2011) ....................................15

Wong v. Accretive Health, Inc.,
   773 F.3d 859 (7th Cir. 2014) .................................................................................11

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .................................................................7

**Rules**

Federal Rule of Civil Procedure 23(b)(1)(A) ..............................................................17
Federal Rule of Civil Procedure 23(b)(1)(B) ..............................................................17
Federal Rule of Civil Procedure 23(e)................................................................... passim
Federal Rule of Civil Procedure 23(e)(2) .....................................................................9

**Treatises**

Restatement (Third) of Trusts, § 100 cmt. b(1)..........................................................13

**Regulations**

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed.
   Reg. 33830 .........................................................................................................8

## INTRODUCTION

On March 17, 2022, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiff Dustin S. Soulek's class action claims against Defendants Costco Wholesale Corporation ("Costco"), the Board of Directors of Costco Wholesale Corporation ("Board Defendants"), and the Costco Benefits Committee ("Benefits Committee") (collectively, "Defendants"), under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), relating to the management of the Costco 401(k) Retirement Plan ("Costco Plan" or "Plan"). *See Dkt. 52*. The Court found that, "[c]onsidering the relevant Seventh Circuit factors, the Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class." *Id. at 2*. The events following this order confirm that the Settlement is fair and reasonable and warrants final approval.

**First**, an Independent Fiduciary reviewed the Settlement pursuant to Department of Labor ("DOL") regulations and independently determined that the Settlement terms are reasonable. *See Declaration of Paul M. Secunda in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Second Secunda Decl.") Ex. 1 (Report of the Independent Fiduciary)*. Among other things, the Independent Fiduciary found that "[t]he terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances." *Id. at p. 3*.

1

**Second**, notice of the Settlement was provided to 33,282 Former Participant Settlement Class Members by the Settlement Administrator, Analytics LLC, *Declaration of Jeffrey Mitchell in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Mitchell Decl.")* ¶ 8, and to about approximately 200,000 Current Participant Class Members by the Plan Recordkeeper, T. Rowe Price, according to Defendants. In response, no objections were received. *See Mitchell Decl. ¶ 14.* The fact that the class members voiced no concerns about the Settlement further demonstrates that the Settlement is fair and reasonable. *See Bhattacharya v. Capgemini N. Am., Inc.,* No. 1:16-cv-07950, Dkt. 114, at *4 (N.D. Ill. Nov. 13, 2018).

Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement. This motion is unopposed by the Defendants.

**BACKGROUND**

## I.     PROCEDURAL HISTORY[1]

### A.     The Pleadings and Motion to Dismiss

Plaintiff Dustin S. Soulek, individually, and as representative of a Class of Participants and Beneficiaries of the Costco 401(k) Retirement Plan ("Plaintiff"), filed this action on June 23, 2020, *Dkt. 1*, and filed an Amended Complaint on September 21, 2020. *Dkt. 20.* In his Amended Complaint, Plaintiff alleges that during the putative Class Period (June 23, 2014 through the date of judgment), Defendants, as fiduciaries

---

[1] The procedural history of this case was previously discussed in connection with Plaintiff's motion for preliminary approval, *Dkt. 49 at 2–4*, and motion for attorneys' fees, costs, and class representative compensation award. *Dkt. 54-1 at 2–4.* For ease of reference, Plaintiff has recounted that history here.

2

of the Plan, breached the duties they owed to the Plan, to Plaintiff, and to the other Participants of the Plan by, among other things: (1) authorizing the Plan to pay objectively unreasonable fees for recordkeeping and administration (RK&A); (2) failing to objectively, reasonably, and adequately review the Plan's investment portfolio with due care to ensure that each investment share class was prudent, in terms of cost; and (3) maintaining certain funds in the Plan despite the availability of identical or similar investment share classes with lower costs. *Id.*

On October 16, 2020, Defendants filed a motion to dismiss the Amended Complaint, *Dkts. 25-27*, and between November 6, 2020, and December 4, 2020, Plaintiff subsequently opposed that motion, *Dkts. 28-29*, Defendants replied in further support of their motion, *Dkt. 30*, Plaintiff surreplied in further opposition, *Dkt. 31*, and Defendants responded in opposition to Plaintiff's surreply. *Dkt. 32*.

The Court heard oral argument on Defendants' motion on December 21, 2020. *Dkt. 33*. Between June 1, 2021 and July 29, 2021, the Parties filed notices of supplemental authority. *Dkts. 35-39*. On September 30, 2021, the Court stayed the case in light of the then-pending decision of the United States Supreme Court in *Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022). While this stay was in place, the Parties decided to attempt mediation of the matter.

### B. Mediation and Settlement

The Parties engaged in a full-day mediation with a neutral mediator, Robert Meyer, on January 12, 2022. *Declaration of Paul Secunda in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Secunda Decl.")* (Dkt.

50), ¶ 10. After extensive, arm's length negotiations, including weeks of negotiations between the Parties after the mediation concluded, the Parties reached a Memorandum of Understanding as to Settlement of All Claims on February 17, 2022.

### C. Preliminary Approval of the Settlement

Plaintiff filed a motion seeking preliminary approval of the Settlement on March 14, 2022. *Dkts. 48, 49, 50-1.* The Court entered an Order of preliminary approval of the Settlement Agreement on March 17, 2022. *Dkt. 52.* Plaintiff is filing the present motion no later than ten (10) business days before the Fairness Hearing on July 18, 2022, meaning by July 1, 2022. *Settlement Agreement ¶ 4.1.* To date, no objections to the Settlement or the requested distributions have been received. *Mitchell Declaration, ¶ 14.*

## II.  OVERVIEW OF SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement applies to the following Settlement Class:

> All participants, beneficiaries, and alternate payees of the Costco 401(k) Retirement Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan): (1) who have a Plan account as of the date the Settlement Class is certified by the Court ("Current Participants") or (2) who do not have a Plan account as of the date the Settlement Class is certified by the Court, and had a Plan account on or after the last business day of a month on and after May 30, 2014, provided that such Plan account attained a balance in excess of $1000 for at least 12 months beginning on and after May 30, 2014 (such balance to be calculated as of the last business day of a month) ("Former Participants).

*Settlement ¶* 2.34. There are 33,282 Former Participant Settlement Class Members, *Second Secunda Decl.* ¶ 4; *Mitchell Decl.* ¶ 8, and approximately 200,000 Current

4

Participant Settlement Class Members, according to Defendants and the Plan Recordkeeper, T. Rowe Price.

## B.   Monetary Relief

Under the Settlement, Costco's obligation is "to ensure that the Plan Administrative Service Per Capita Recordkeeping Fee deducted from Plan accounts does not exceed $3.25 per Plan account per quarter" and that obligation "continue[s] for the number of calendar quarters necessary for the value of the reduction of the Plan Administrative Service Per Capita Recordkeeping Fee amount to total $3,200,000 (three million, two hundred thousand dollars)." *Settlement Agreement, ¶ 5.2.* Additionally, Costco will deposit $400,000 (four hundred thousand dollars) into the Former Participant Pool." *Id. ¶ 6.4.* The Settlement Administrator will cause the Former Participant Pool to be allocated and distributed in accordance with the Plan of Allocation set forth in Article 7 of the Settlement Agreement and as ordered by the Court. *Id. ¶¶ 7.1-7.4.*

## C.   Release of Claims

In exchange for the foregoing relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties" as defined in the Settlement) from all claims:

> Involving any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether arising under local, state, or federal law, whether by statute, contract, common law, equity, or otherwise, whether brought in an individual, representative, or any other capacity, whether involving legal equitable, injunctive, declaratory, or any other type of relief (including, without limitation, indemnification or contribution), whether,

5

known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that have been, could have been, or could be brought by or on behalf of all or any Settlement Class Member or the Plan at any point prior to the Court's final approval of the Settlement, and that were asserted in the Lawsuit or that might have been asserted in the Lawsuit under any legal or equitable basis related in any way to the Plan, that relate in any way to the fees, expenses, investments, investment performance and or management of the Plan, that assert a claim for breach of fiduciary duty against any Plan fiduciary, that relate to the compensation or services of any Plan service provider or Plan fiduciary, or that relate to or arise out of the defense or settlement of the Lawsuit, including any claim that the Settlement Agreement or any aspect of its implementation violates any applicable law or right of any Settlement Class Member, or that would have been barred by the doctrine of res judicata or claim preclusion had the Lawsuit been fully litigated to a final judgment.

*Id.* ¶¶ *9.1-9.6.* The Released Claims do not include claims to enforce the Settlement Agreement. *Id. at* ¶ *9.2.*

## III. CLASS NOTICE AND REACTION TO THE SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed Notices of Settlement to each of the 33,282 Former Participant Settlement Class Members identified by the Plan's recordkeeper. *See Mitchell Decl.* ¶ *8.* The Plan's recordkeeper, T. Rowe Price, mailed and/or emailed Notice of Settlement to each of the approximately 200,000 Current Participant Settlement Class Members, according to Defendants.

Prior to sending these Former Participant Notices, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address Database. *Id.* ¶ *7.* In the event that any Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the

6

absence of a forwarding address. *Id. ¶¶ 9–10.* As a result, the notice program was very effective. Out of approximately 33,282 Notices that were mailed, only 1,152 (3.5%) were ultimately undeliverable despite these efforts. *Id. ¶ 11.*

If any Former Participant Class Members desired further information, Analytics established a Settlement Website at www.CostcoERISASettlement.com *Id. ¶ 12.*[2] Analytics also created and maintained a toll-free telephone support line (844-473-0587) as a resource for Former Participant Class Members seeking additional information. *Id. ¶ 13.* This telephone number was referenced in the Notices, and also appears on the Settlement Website. *Id.*

The deadline to submit objections to the Settlement was June 17, 2022. *See Dkt. 52 at 7-8.* No objections were received from Former Participants. *See Mitchell Decl. ¶ 14.* On March 21, 2022, Defendants sent the notices required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the appropriate federal and state officials. *Dkt. 50-1, Ex. 5.* No objections were received in response to the CAFA notices, according to Defendants.

---

[2] Among other things, the Settlement Website includes: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for download (including, among other things, the Settlement Agreement, Settlement Notice, Complaint, and the Court's Preliminary Approval Order; (4) contact information for Class Counsel and the Defendants' Counsel; and (5) email, phone, and U.S. mail contact information for Analytics *Mitchell Decl. ¶ 12.*

7

## IV.  REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Paragraph 3.1 of the Settlement Agreement and applicable ERISA regulations,[3] the Settlement was submitted to an Independent Fiduciary (Fiduciary Counselors Inc.) for review following the Court's Preliminary Approval Order. *See Second Secunda Decl. Ex. 1.*

After reviewing the Settlement and numerous case documents, and interviewing counsel for each of the Parties, the Independent Fiduciary affirmed, among other things, that: (1) "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone" *id.* at p. 3; (2) "[t]he terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances," *id.*; and (3) "[t]he transaction is not part of an agreement, arrangement, or understanding designed to benefit a party in interest." *Id.* Accordingly, the Independent Fiduciary confirmed that "[b]ased on these determinations about the Settlement, Fiduciary Counselors hereby approves and authorizes the Settlement on behalf of the Plan in accordance with PTE 2003-39." *Id.*

---

[3] See Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

# ARGUMENT

## I. LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. "[T]he law quite rightly requires more than a judicial rubber stamp when the lawsuit that the parties have agreed to settle is a class action." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). A court may approve a settlement only if it determines after a hearing that the proposed settlement is fair, reasonable, and adequate. *Eubank v. Pella Corp.*, 2019 WL 1227832, at *2 (N.D. Ill. Mar. 15, 2019).

Federal Rule of Civil Procedure 23, as amended (effective December 2018), identifies four factors considered in making such determination: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors overlap significantly with the more detailed list of factors that courts in this Circuit have typically used for purposes of reviewing a proposed class action settlement (the "*Isby* factors"): "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Because these principles "subsume most of the factors listed in Rule 23(e)(2)," *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *5 (N.D. Ill.

9

May 14, 2019), they are considered together. As discussed below, both the factors in Rule 23(e)(2) and the *Isby* factors overwhelmingly favor approval of the Settlement.

## II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Class Representatives and Class Counsel Have Adequately Represented the Class

First, the Class Representatives and Class Counsel have adequately represented the interests of the Class. *See* Fed. R. Civ. P. 23(e)(2)(A). The named Plaintiff agreed to perform his duties as class representatives, and he has fulfilled those duties throughout the course of the litigation. *See Dkt. 51 at ¶¶ 2–3.* Class Counsel are also adequate, with extensive experience in ERISA litigation, *see Secunda Decl. ¶¶ 27–29*, and have skillfully represented the Class by obtaining substantial relief in the incipiency of litigation. This factor supports final approval.

### B.    Settlement Is the Product of Arm's-Length Negotiations Between Experienced, Capable Counsel

Next, courts consider whether the proposal was negotiated at arm's length and review the circumstances surrounding the negotiations, including the stage of the proceedings and the amount of discovery completed at the time of settlement. *See* Fed. R. Civ. P. 23(e)(2)(B); *Isby*, 75 F.3d at 1199. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). That is exactly the situation here: The settlement negotiations

10

took place in the context of an arm's length mediation session before a highly-regarded and impartial mediator. *See Secunda Decl. ¶ 10 & Ex. B.*

Although the case settled in its incipiency, the record reflects that "enough discovery has taken place to ensure 'effective representation' of the settlement class." *See Am. Int'l Group, Inc.,* 2012 WL 651727, at \*9 (quoting *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011)). Relevant here: (1) Class Counsel undertook an extensive investigation of the factual and legal bases for Plaintiff's claims prior to commencing the action, *Secunda Decl. ¶ 8,* (2) the parties' legal positions were staked out in connection with the motion to dismiss, *id., ¶ 9,* and (3) Class Counsel had the necessary experience and qualifications to evaluate the Parties' legal positions. *Id. ¶¶ 12–29.* This gave the parties a clear view of the facts and law, and the strengths and weaknesses of their case. Under these circumstances, it was appropriate for the parties to explore an early settlement.[4]

Moreover, Class Counsel and Defendants' counsel (Seyfarth Shaw LLP) are knowledgeable and experienced in complex ERISA class actions such as this, and were assisted in their negotiations by Mr. Meyer, an experienced, independent mediator. *See Secunda Decl. ¶ 10 & Exh. B.* After separately interviewing Class

---

[4] Courts within this Circuit have approved settlements at similar stages of proceedings. *See, e.g., Wong v. Accretive Health, Inc.,* 773 F.3d 859, 864 (7th Cir. 2014) (noting that, "although formal discovery had not commenced, [plaintiffs] had access to extensive public documents," and settlement was reached "after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated" before an experienced mediator); *Dolins v. Cont'l Cas. Co.,* No. 1:16-cv-08898, Dkt. 133, at \*5 (N.D. Ill. Sept. 20, 2018) ("The negotiations were supported by a robust investigation before commencement of the Lawsuit; the production and review of confidential documents … and extensive legal and factual research on the issues in the case."); *Schulte,* 805 F. Supp. 2d at 587.

Counsel and Defendants' counsel, the Independent Fiduciary, Fiduciary Counselors, concluded, "[t]he terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances." *Second Secunda Decl. Ex. 1* at 10. These factors also support final approval.

## C. The Settlement Provides Substantial Monetary Relief to the Class

The third Rule 23 factor considers whether "the relief provided to the class is adequate" in light of "the costs, risks, and delay" of further litigation. *See* Fed. R. Civ. P. 23(e)(2)(C). The product of these serious and informed negotiations is a Settlement that provides significant benefits to the Class. For the reasons that follow, these factors favor final approval.

The negotiated relief represents a significant portion of the alleged losses sustained by the Plan. For purposes of mediation, Plaintiff estimated that the total retirement plan fees (RPS) exceeded a reasonable amount by $30 million. *Secunda Decl. ¶ 4 & n.1.* Based on this estimate, the $5.1 million recovery represents over 16% of the allegedly excessive RPS fees. This is on par with numerous other ERISA class action settlements that have been approved across the country.[5] See *In re Household Int'l, Inc.*

---

[5] *See, e.g., Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95 at 10 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, Dkt. 211 (May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Price v. Eaton Vance Corp.*, No. 18-12098, Dkt. 32 at 12 (May 6, 2019), *approved* Dkt. 57 (D. Mass. Sept. 24, 2019) (23% alleged losses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858 (C.D. Cal. July 30, 2018) (25% of estimated losses); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model); *see also In re Rite Aid Corp.*

12

*ERISA Litig.*, 2004 WL 7329911, at *4 (N.D. Ill. Nov. 22, 2004) (finding the monetary relief was "fair, reasonable, and adequate" where "[t]he Settlement amount is within the range of settlement values obtained in similar cases and is within the range of reasonable settlements that would have been appropriate in this case"); *Schulte*, 805 F. Supp. 2d at 583–84 (collecting cases approving between 5.35% and 25.5% of a class's maximum potential recovery).

Finally, even if Plaintiffs prevailed on liability, issues regarding loss-causation would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (determination of investment losses in breach of fiduciary duty cases is "difficult"). In the absence of a settlement, Plaintiffs would have faced significant litigation risks. At the time the parties reached a settlement, Defendants' Motion to Dismiss was pending. In the event the motion was denied, there was a risk that the Court might have dismissed the claims on class certification or summary judgment.[6] Assuming the case proceeded to trial, the Defendants still might have prevailed. Finally, even if Plaintiffs prevailed at trial on liability, issues would have remained regarding proof of loss and calculation of damages.[7]

There is little doubt that continuing the litigation would have resulted in complex and costly proceedings, which would have significantly delayed relief to the

---

*Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

[6] *See, e.g., Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011).

[7] *See, e.g., Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134–35 (D. Colo. 2020), *aff'd,* 1 F.4th 769 (10th Cir. 2021) (rejecting the plaintiffs' proffered damages calculation).

Class, and might have resulted in no relief at all.[8] ERISA cases such as this can extend up to a decade before final resolution, sometimes going through multiple appeals.[9] The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See, e.g., Schulte*, 805 F. Supp. 2d at 586. Accordingly, it is no surprise that the Independent Fiduciary concluded that "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone." *Second Secunda Decl. Ex. 1* at p. 3.

## D. The Settlement Proceeds Will Be Distributed Equitably and Efficiently

The Settlement also outlines an equitable and effective method of distribution. See Fed. R. Civ. P. 23(e)(2)(C)(ii), (D). As noted above, and consistent with numerous other ERISA settlements that have received court approval, current Participants will receive an administrative fee reduction valued at a maximum of $3.2 million, and former Participants may elect to receive a check from the total Former Participant Pool

---

[8] *See Schulte*, 805 F. Supp. 2d at 582–83; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort."); *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *4 (S.D. Ill. Dec. 16, 2018) ("[A]bsent this proposed resolution and considering the strong likelihood of post-trial motions and appeals, the parties were unlikely to achieve a final disposition any time soon.").

[9] *See, e.g., Spano v. Boeing Co.*, 3:06-cv-00743, Dkt. 588 (N.D. Ill. Mar. 31, 2016) (9 years after filing); *Abbott v. Lockheed Martin Corp.*, 3:06-cv-00701, Dkt. 526 (S.D. Ill. July 20, 2015) (8.5 years after filing).

14

of $400,000. *See supra* at p. 5. This method of distribution is both effective and efficient. This Court should, therefore, conclude that "the Settlement Agreement provides fair, reasonable and adequate relief to the class given . . . the effectiveness of the proposed method for distributing relief, which ensures that qualified Class Members with greater than *de minimis* damages receive a portion of the settlement, in rough proportion to their alleged losses." *See Allegretti v. Walgreen Co.,* 1:19-cv-05392, Dkt. 116 at *5 (N.D. Ill. Feb. 16, 2022).

### E.    The Class, Independent Fiduciary, and Counsel Support the Settlement

In light of the aforementioned factors, it is not surprising that there have been no objections to either the Settlement terms or the requested attorneys' fees, expenses, or service awards from any of the 33,282 Former Class Members or approximately 200,000 Current Class Members who were sent a Settlement Notice. *Mitchell Decl. ¶¶ 8, 14.* The absence of any objections to the Settlement by Class Members supports the conclusion that the proposed settlement is fair, reasonable, and adequate. *See Bhattacharya,* No. 1:16-cv-07950, Dkt. 114, at *4; *Lively v. Dynegy, Inc.,* 2008 WL 4657792, at *2 (S.D. Ill. Sept. 30, 2008); *see also Williams v. Rohm & Haas Pension Plan,* 2010 WL 1490350, at *3 (S.D. Ind. Apr. 12, 2010)*, aff'd,* 658 F.3d 629 (7th Cir. 2011).

The Independent Fiduciary's approval and authorization of the settlement of Released Claims on behalf of the Plan further supports the Settlement. *Second Secunda Decl. Ex. 1 at p.* 3. In authorizing the Settlement, the Independent Fiduciary affirmed that "[t]he Settlement terms, including the scope of the release of

15

claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone." *Id.*

Finally, it is Class Counsel's opinion that the proposed Settlement is fair and reasonable. *Second Secunda Decl. at ¶ 2.* This *Isby* factor supports final approval of the Settlement. 75 F.3d at 1199.

## III.  THE CLASS NOTICE PLAN WAS REASONABLE AND EFFECTIVE

The class notice program also was reasonable and satisfied the requirements of Rule 23 and due process. The "best notice" practicable under the circumstances includes "individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B.) That is precisely the type of notice that was provided here. *See Allegretti*, 1:19-cv-05392, Dkt. 116 at *3–4 (approving a similar notice program); *Spano*, No. 3:06-cv-00743, Dkt. 588 at *3 (same); *Nolte v. Cigna Corp.*, No. 2:07-cv-02046, Dkt. 412 at *3 (C.D. Ill. Oct. 15, 2013) (same).

As noted above, the Settlement Administrator sent the Court-approved Settlement Notices to Former Participant Class Members via first-class U.S. Mail and the Plan's recordkeeper, T. Rowe Price, mailed and/or emailed Notice of Settlement to each of the Current Participant Settlement Class Members. *See supra* at 6-7. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Further, the record reflects that approximately 96.5% of Notices of Settlement sent to Former Participants were successfully

16

delivered. *See Mitchell Decl.* ¶ 11. This confirms the effectiveness of the notice program in this case. *See T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *7 (N.D. Ill. Mar. 25, 2022). In addition, the Notices were accessible to all class members online via the Settlement Website.

Finally, the content of the Notices also was reasonable. These Notices were previously approved by the Court, *see Dkt. 52 at 4-5*, and are more than sufficient to meet the Rule 23 standard. *See, e.g., Allegretti,* 1:19-cv-05392, Dkt. 116 at *4. No Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the Settlement Website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel. Indeed, Class Counsel spoke to a number of Former and Current Class Members about the Settlement after the Notice was mailed to the Class.

## IV. THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court preliminarily certified the Settlement Class. *Dkt. 52* at 4. In support of preliminary approval, Plaintiff previously established that: (1) the class is numerous; (2) common issues pertain to all class members; (3) Plaintiff's claims are typical of other class members' claims; (4) Plaintiff is an adequate class representatives; (5) Class Counsel are experienced and competent; (6) class certification is appropriate under Rule 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is also appropriate under Rule 23(b)(1)(B) because any individual adjudication would be dispositive of other class members' interests. *Dkt. 49* at 15-18. Nothing has changed since the Court

17

preliminarily certified the Settlement Class. Accordingly, the Court should reaffirm its certification of the Class.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the settlement and enter the accompanying proposed Final Approval Order.

Dated this 1st day of July, 2022

**WALCHESKE & LUZI, LLC**

<u>s/ Paul M. Secunda</u>
James A. Walcheske*
Scott S. Luzi*
Paul M. Secunda**
* admitted pro hac vice
** admitted in W.D. Mich.
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: psecunda@walcheskeluzi.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2022, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: July 1, 2022                    s/Paul M. Secunda
                                       Paul M. Secunda